1  Gail E. Cohen (093210), gcohen@mail.hinshawlaw.com
   Ophir Johna (228193), ojohna@mail.hinshawlaw.com
2  HINSHAW & CULBERTSON LLP
   633 West Fifth Street, 47th Floor
3  Los Angeles, California 90071
   Telephone:  (213) 680-2800
4  Facsimile:  (213) 614-7399

5  Attorneys for Defendant
   Provident Life and Accident
6  Insurance Company

7

8                  **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  NANCY GRIFFITH, M.D.,                ) CASE NO.: 2:14-cv-8275
                                         )
12            Plaintiff,                 )
                                         ) **NOTICE OF REMOVAL BASED
13      vs.                              ) ON DIVERSITY AND FEDERAL
                                         ) QUESTION**
14  PROVIDENT LIFE AND ACCIDENT          )
    INSURANCE COMPANY and DOES 1         ) **[28 U.S.C. §§ 1331, 1332, 1441, 1446]**
15  through 10, inclusive,               )
                                         ) [Filed concurrently with: Declarations
16            Defendants.                ) of Joseph F. Sullivan and Roxanne
                                         ) Kaminski; Notice of Interested Parties;
17                                       ) and Corporate Disclosure Statement]
                                         )
18                                       )
                                         ) Complaint Filed: September 24, 2014
19  _____ )

20

21

22

23

24

25

26

27

28

i:\office7\7671\536\14pleadings\notice of removal.doc

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendant Provident Life and Accident Insurance Company ("Provident Life") hereby removes to this Court the action commenced by Plaintiff Nancy Griffith, M.D. ("Griffith") on September 24, 2014 in the Superior Court of the State of California, County of Los Angeles, entitled *Nancy Griffith, M.D. v. Provident Life and Accident Insurance Company*, Case No. BC558580.

## I.

## **TIMELINESS**

1.    Provident Life was served with a summons from the state court and a copy of the complaint in this action on September 26, 2014.  This removal therefore is timely.  *See* 28 U.S.C. §1446(b).  True and correct copies of the complaint, summons, and all other documents served on Provident Life in this action are attached as Exhibit "A."

## II.

## **JOINDER**

2.    Other than Provident Life, no other non-fictitious defendants were named in the complaint or served with a summons.  As such, no joinder is necessary. *See* 28 U.S.C. § 1441(a); *Salveson v. Western Bankcard Assn.*, 731 F.2d 1423, 1429 (9th Cir. 1984).

///

///

///

### III.

### DIVERSITY JURISDICTION

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is an action which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs, as set forth more fully below.

**Citizenship of Parties:**

4.    Upon information and belief, Griffith is, and at the time of the filing of the subject state court action was, a citizen of California.

5.    Provident Life is, and at the time of the filing of the subject state court action was, a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Chattanooga, Tennessee.

**Amount in Controversy:**

6.    The amount in controversy in this action exceeds $75,000 (exclusive of interest and costs), as discussed below.

Policy benefits:

7.    The complaint seeks the recovery of residual disability benefits under three disability income insurance policies issued by Provident Life to Griffith (the "Policies"). Complaint, ¶¶ 5-9. The complaint alleges that the Policies provide a combined maximum monthly benefit of $13,165 to Griffith in the event of total or residual disability, as defined by the Policies, after a 30-day elimination period, provided all conditions of coverage are met. Complaint, ¶¶ 5-9, 12. The amount of the monthly benefit payable in the event of residual disability is determined by multiplying the percentage of Griffith's loss of monthly income by the amount of the

total monthly benefit.  Complaint, ¶ 9.

8.   The complaint alleges that Griffith was residually disabled between December 1, 2011 and June 1, 2013 (*i.e.*, 16 months), and that she experienced a 20% loss of monthly income during that period.  Complaint, ¶ 33.  The complaint alleges that Provident Life denied Griffith's claim and declined to pay her benefits. Complaint, ¶¶ 27, 32, 34, page 11 at lines 13-15.

9.   Based on the complaint's allegations, Griffith claims entitlement to policy benefits in the amount of $39,495.  This amount is calculated by multiplying 20% (Griffith's alleged loss of monthly income) by $13,165 (the maximum combined monthly benefit) to obtain a residual monthly benefit of $2,633, and then multiplying that benefit by 15 months (16 months of alleged disability minus the alleged elimination period of 30 days).

Consequential and Punitive Damages:

10.  The complaint also seeks the recovery of an unspecified amount of "consequential" damages as well as punitive damages.  Complaint, page 10 at lines 1-3 and 12-20.  Consequential and punitive damages are potentially recoverable damages in connection with a bad faith claim, which is asserted in the complaint, and such damages are properly considered in calculating the amount in controversy for purposes of removal.  *See Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 922 (1978) (permitting punitive damages in California bad faith actions against an insurer); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447 (S.D. Cal. 1995) (punitive damages may be used in calculating amount in controversy for purposes of removal); *Conrad v. Hartford Acc. & Indem. Co.*, 994 F.Supp. 1196, 1198 (N.D. Cal. 1998) (special and general damages, attorneys' fees, and punitive damages are included in the calculation of the amount in controversy).

Attorneys' Fees:

11.  The complaint also seeks the recovery of an unspecified amount of attorney's fees allegedly incurred by Griffith in connection with pursuing policy

benefits. Complaint, page 10 at lines 7-11. Such damages are potentially recoverable in connection with Griffith's bad faith claim, and may also be considered in calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985); *Surber v. Reliance Indem. Co.*, 110 F.Supp.2d 1227, 1232 (N.D. Ca. 2000) ("In breach of good faith actions like this one, California law permits the plaintiff to recover attorney's fees at the discretion of the Court … Therefore, the Court must consider attorney's fees as an element of the amount in controversy in this case."); *Conrad, supra*, 994 F.Supp. at 1198.

Emotional Distress:

12.   The complaint also seeks the recovery of an unspecified amount of emotional distress damages. Complaint, page 10 at lines 4-7. Emotional distress damages also may be considered in determining the amount in controversy for purposes of removal. *See Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002); *Surber, supra*, 110 F.Supp.2d at 1232.

13.   Thus, when considering the amount of the policy benefits at issue, consequential damages, punitive damages, attorneys' fees, and emotional distress damages, the total amount in controversy exceeds $75,000.

## IV.
## FEDERAL QUESTION

14.   Jurisdiction is also proper in this Court pursuant to 28 U.S.C. Sections 1331 and 1441(b), in that this action arises under the laws of the United States, namely, the Employee Retirement Income Security Act, 29 U.S.C. Sections 1001 *et seq*. ("ERISA"), with the effect that ERISA preempts all state law claims for relief asserted in the operative complaint and thus presents a federal question.

**Relevant Facts Establishing Federal Question Jurisdiction Under ERISA:**

15. Provident Life issued to Griffith the following three policies that are the subject of this action: policy number 6-335-733803, effective October 1, 1986; policy number 6-335-861399, effective August 1, 1988; and policy number 6-337-5010813, effective August 1, 1989 (collectively, the "Policies"). *See* Exhs. 1-3 to Declaration of Joseph F. Sullivan (filed concurrently).

16. On Griffith's application for each of the Policies, Griffith stated that she was a full-time employee of South Bay Family Medical Group ("South Bay"), and that South Bay will "pay for all disability coverage to be carried by [Griffith] with no portion of the premium to be included in [her] taxable income." *See id.* at pp. 31, 65, 96.

17. All three of the Policies were issued subject to a Salary Allotment Agreement between South Bay and Provident Life, which agreement was incorporated into each of the Policies by an endorsement titled "Salary Allotment Premium Payment." *See id.* at pp. 14, 45, 75, 95; Declaration of Roxanne Kaminski ("Kaminski Decl."), ¶ 4.

18. In addition to the Policies, South Bay's Salary Allotment Agreement with Provident Life included disability policies issued by Provident Life to other partners and employees of South Bay. Kaminski Decl., ¶ 4. In connection with the Salary Allotment Agreement, the Policies and the other disability policies issued by Provident Life to South Bay's employees and partners were collectively assigned the same risk group number. *Id.* The Salary Allotment Agreement required South Bay to pay all premiums due under the Policies to Provident Life. *Id.*

19. In accordance with the Salary Allotment Agreement, Provident Life sent premium statements for the Policies directly to South Bay, and South Bay processed and paid all such premiums. *Id.*

20. The Salary Allotment Agreement provided South Bay's employees and partners with a significant premium discount, as well as the opportunity to potentially

obtain higher coverage limits. *Id.* at ¶¶ 3, 5.

21. Upon information and belief, during the same period of time, South Bay arranged for and funded other insurance coverage for its employees, including non-partner employees.

22. In or about April 1991, Griffith requested to be removed from South Bay's risk group. *Id.* at ¶ 6. However, Griffith was permitted to retain the Policies, and Provident Life began to bill her for the premiums directly, per Griffith's request. *Id.*

**The Policies Are Governed By ERISA:**

23. The question of whether ERISA applies to a particular claim or dispute involves a two-step process. The first step is to determine whether an "employee welfare benefit plan" exists, as that term is defined by ERISA, 29 U.S.C. § 1002(2)(A). Assuming the answer is in the affirmative, the second step is to determine whether the claim or dispute set forth in the complaint arises under or is related to the employee welfare benefit plan, such that it would be subject to ERISA's broad preemptive force. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

24. Under ERISA, five criteria are required for a plan to constitute an employee welfare benefit plan:

> (1) A plan, fund or program (2) established or maintained
>
> (3) by an employer or by an employee organization, or by both (4)
>
> for the purpose of providing . . . medical, surgical, or hospital care
>
> or benefits, or benefits in the event of sickness, accident, disability .
>
> . . benefits (5) to participants or their beneficiaries.

29 U.S.C. § 1002(1); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 907 (9th Cir. 2001); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982); *Pierson v. Continental Cas. Co.*, 2000 WL 1879895 at * 5 (C.D. Cal. 2000). All of these criteria

exist here and establish that the Policies are subject to ERISA.

Criterion No. 1:

25. "A 'plan, fund or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan, supra*, 688 F.2d at 1372. An ERISA "plan" or "program" can consist of multiple insurance policies – including individual insurance policies – which, taken as a whole, constitute the "plan" or "program." *See Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995) (holding that an individual health insurance policy and a group health insurance policy together formed an ERISA plan); *Pierson, supra*, 2000 WL 1879895, at * 5 ("Courts have recognized... that employee welfare benefit plans can be funded through the purchase of individual policies."). Here, the intended benefits are the disability benefits provided by the Policies. The intended beneficiaries are South Bay's employees, including Griffith. The source of financing is the South Bay, who paid the premiums for the Policies (as well as for the other employees' policies) directly to Provident Life pursuant to the Salary Allotment Agreement. Finally, a "procedure to apply for and collect benefits" under a plan is evidenced by the terms, provisions and procedures of the Policies themselves. Thus, a "plan" or "program" within the meaning of ERISA exists here.

Criterion No. 2:

26. An employer "establishes or maintains" an ERISA employee benefit plan by, among other ways, merely arranging for insurance coverage. *See* 29 U.S.C. § 1002(1); *Credit Managers Assn. v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (An employer can "establish an ERISA plan rather easily .... arranging for a group-type insurance program is sufficient"). Here, South Bay "established or maintained" the plan or program by, among other things, arranging the insurance policies that would provide its employees, including Griffith, with disability and other insurance coverage, through a combination policies, as well as

-8-

processing the payment of premiums for that coverage.

27. Furthermore, the fact that an employer pays for coverage has been deemed to be sufficient in and of itself to establish an ERISA plan. *Kennesaw Life, supra,* 809 F.2d at 625 (an employer can establish an employee benefit program merely by purchasing insurance for its employees).[1] Here, South Bay paid the premiums for the Policies and for the policies issued to its other employees through the Salary Allotment Agreement. Thus, South Bay "established or maintained" the plan or program.

Criteria Nos. 3 and 4:

28. The plan, fund, or program must be established or maintained by an "employer or employee organization" (criterion number 3), for the purpose of providing . . . benefits in the event of sickness, accident, disability . . . ." (criterion number 4). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . ." 29 U.S.C. § 1002(5). Here, the South Bay was an "employer" that provided a benefit program to its employees. And the Policies provided disability benefits – a type of benefits expressly governed by ERISA. *See* 29 U.S.C. § 1002(1).

Criterion No. 5:

29. South Bay's employees, including Griffith, are all "participants" and/or "beneficiaries" in the program or plan within the meaning of ERISA. The term

---

[1] The ERISA statutory scheme contains a "safe harbor" provision, whereby plans are exempted from ERISA if *all* of four specific factors are present. 29 U.S.C. § 2510.3-1(j). The failure to meet even one of the four factors, however, "conclusively determines" the existence of an ERISA plan. *See Pierson, supra,* 2000 WL 1879895 at *9 (citing *Stuart v. UNUM Life Ins. Co. of Am.,* 217 F.3d 1145, 1153 (9th Cir. 2000)); *see also Sarraf v. Standard Ins. Co.,* 102 F.3d 991, 993 (9th Cir. 1996). One of the four factors is the lack of any monetary contribution by the employer. 29 U.S.C. § 2510.3-1(j); *Pierson, supra,* 2000 WL 1879895 at *9. Thus, if the employer makes *any* monetary contribution to the insurance program, the "safe harbor" provision is inapplicable (regardless of whether the other three "safe harbor" factors are met) and, as stated above, this *conclusively establishes* the existence of an ERISA plan. *See Pierson, supra,* 2000 WL 1879895 at *9 (citing *Stuart, supra,* 217 F.3d at 1153); *Sarraf, supra,* 102 F.3d at 993. Accordingly, South Bay's payment of the premiums for the Policies conclusively establishes the existence of an ERISA plan.

1  "'participant' means any employee or former employee of an employer, or any

2  member or former member of an employee organization, who is or may become

3  eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C.

4  § 1002(7).  The statute defines "beneficiary" as "a person designated by a participant,

5  or by the terms of an employee benefit plan, who is or may become entitled to a

6  benefit thereunder."  29 U.S.C. §1102(8).

7       30.  Accordingly, the Policies are part of an employer-sponsored "plan, fund

8  or program" within the meaning of ERISA.

9

10       **The Entire Action Is Preempted By ERISA:**

11       31.  ERISA provides the exclusive federal remedy for the enforcement of

12  rights and obligations under ERISA plans.  *See* 29 U.S.C. § 1132(a)(1)(B).  ERISA's

13  preemption clause is liberally and broadly construed.  *See Egelhoff v. Egelhoff*, 532

14  U.S. 141 (2001) (ERISA's preemptive authority sweeps broadly to preclude the

15  application of provisions of state law, statutory or decisional, that would undercut the

16  uniform implementation of ERISA's text or its attendant case law); *P.M. Group Life*

17  *Ins. v. Western Growers Assur. Trust*, 953 F.2d 543, 545 (9th Cir. 1992) ("ERISA

18  contains one of the broadest preemption clauses ever enacted by Congress.").

19       32.  All state law causes of action that "relate to" ERISA plans are

20  completely preempted and are properly dismissed.  *See Pilot Life, supra*, 481 U.S. at

21  45-46.  A state law "relates to" an employee benefit plan, "in the normal sense of the

22  phrase, if it has a connection with or reference to such a plan."  *Shaw v. Delta*

23  *Airlines, Inc.*, 463 U.S. 85, 97 (1983).  Furthermore, because Congress used the

24  phrase "relate to" in its broad sense, the Supreme Court has "emphasized that the

25  preemption clause is not limited to 'state laws specifically designed to affect

26  employee benefit plans.'"  *Pilot Life, supra*, 481 U.S. at 47-48; *see also Shaw, supra*,

27  463 U.S. at 98 (preemption clause should not "be interpreted to pre-empt only state

28

1  laws dealing with the subject matters covered by ERISA . . . .").  ERISA defines

2  "state laws" broadly to include "all laws, decisions, rules, regulations, or other State

3  action having the effect of law, of any State."  29 U.S.C. § 1144(c)(1).

4       33.  All of the complaint's claims for relief arise directly out of Griffith's

5  alleged entitlement to benefits under the Policies.  Specifically, the complaint

6  contends that Griffith is entitled to residual disability benefits under the Policies.

7  Complaint, ¶¶ 27, 32, 34, page 11 at lines 13-15.  The complaint further asserts that

8  Provident Life's determination that Griffith's was not entitled to benefits constitutes a

9  breach of contract and bad faith.  *See* Complaint, pages 9-11.

10      34.  Both of the state law claims asserted in the complaint (breach of

11  contract and bad faith) "relate to" the Policies, and accordingly are preempted by

12  ERISA.  *See, e.g., Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390-91 (9th Cir. 1995)

13  (state law claims of breach of contract and bad faith preempted by ERISA); *McBride*

14  *v. PLM Int'l, Inc.*, 179 F.3d 737, 744-45 (9th Cir. 1999) (same).

15

16  Dated:  October 23, 2014                HINSHAW & CULBERTSON LLP

17

18                                          By:  _____
                                                 GAIL E. COHEN
19                                               OPHIR JOHNA
                                                 Attorneys for Defendant Provident
20                                               Life and Accident Insurance
                                                 Company
21

22

23

24

25

26

27

28

# EXHIBIT A

# COPY

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:** PROVIDENT LIFE AND ACCIDENT INSURANCE
**(AVISO AL DEMANDADO):** COMPANY AND DOES 1 through 10, inclusive,

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 24 2014

Sherri R. Carter, Executive Officer/Clerk

By Myrna Beltran, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** NANCY GRIFFITH, M.D.
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

**BY FAX**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>(Número del Caso):<br>BC558580 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Michael B. Horrow/John Worgul
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
DONAHUE & HORROW LLP
1960 E Grand Ave, Ste 1215, El Segundo, CA 90245    (310) 322-0300

DATE:    SHERRI R. CARTER    Clerk, by    MYRNA BELTRAN    , Deputy
(Fecha)        (Secretario)        (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

SEP 24 2014

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [✓] on behalf of (specify): PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

under: [✓] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
[ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# COPY

1  MICHAEL B. HORROW (SBN 162917)
2  JOHN P. WORGUL (SBN 259150)
   DONAHUE & HORROW, LLP
3  1960 E. Grand Ave., Suite 1215
   El Segundo, California 90245
4  Telephone: (310) 322-0300
   Facsimile: (310) 322-0302
5  Email: mhorrow@donahuehorrow.com
   Email: jworgul@donahuehorrow.com
6  Attorneys for Plaintiff
7  NANCY GRIFFITH, M.D.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 24 2014

Sherri R. Carter, Executive Officer/Clerk
By Myrna Beltran, Deputy

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   FOR THE COUNTY OF LOS ANGELES

11                                            BC558580

12  NANCY GRIFFITH, M.D.,              Case No.:

13              Plaintiff,             COMPLAINT & JURY DEMAND

14       vs,                          1) BREACH OF THE DUTY OF GOOD
                                         FAITH AND FAIR DEALING
15  PROVIDENT LIFE AND ACCIDENT       2) BREACH OF CONTRACT
    INSURANCE COMPANY and, DOES 1 through
16  10, inclusive,

17              Defendant.

18

19  Plaintiff alleges as follows:

20                     GENERAL ALLEGATIONS

21                          Introduction

22       1.      Prior to her disability, Plaintiff, NANCY GRIFFITH, M.D. ("DR. GRIFFITH") was a

23  full time Board Certified Family Practitioner at South Bay Family Medical Group, Inc. Out of

24  concern for her long term health and ability to work, DR. GRIFFITH sought the protection of private

25  disability insurance. DR. GRIFFITH placed her trust in Defendant, PROVIDENT LIFE AND

26  ACCIDENT INSURANCE COMPANY ("PROVIDENT"), to provide this protection. Despite DR.

27  GRIFFITH diligently paying premiums for years, when needed to call on the financial security of

28  her disability insurance, PROVIDENT failed to honor their obligations and failed to pay DR.

                              – 1 –
                      COMPLAINT & JURY DEMAND

GRIFFITH benefits owed under the Policy.

## Factual Summary

2. Plaintiff at relevant times is, and has been, a resident and citizen of the State of California.

3. Plaintiff alleges upon information and belief that the Defendant, PROVIDENT, is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Tennessee, and authorized to transact the business of insurance in this state.

4. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 10, are unknown to plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to plaintiff.

5. On or about September 29, 1986, Defendant PROVIDENT issued Individual Disability Policy No. 733803. According to the terms of the Policy, if DR. GRIFFITH became totally disabled, PROVIDENT promised to pay her a gross monthly benefit equal to six thousand three hundred and forty dollars ($6,340) per month after a thirty (30) day Elimination Period.

6. On or about July 29, 1988, Defendant PROVIDENT issued Individual Disability Policy No. 861399. According to the terms of the Policy, if DR. GRIFFITH became totally disabled, PROVIDENT promised to pay her a gross monthly benefit equal to two thousand two hundred and seventy five dollars ($2,275) per month after a ninety (90) day Elimination Period.

7. On or about July 19, 1989, Defendant PROVIDENT issued Individual Disability Policy No. 5010813. According to the terms of the Policy, if DR. GRIFFITH became totally disabled, PROVIDENT promised to pay her a gross monthly benefit equal to four thousand five hundred and fifty dollars ($4,550) per month after a thirty (30) day Elimination Period.

8. The three above mentioned Individual Disability Policies ("POLICIES") contain the following definition of "Residual Disability":

"Residual Disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness: (1) you are not able to do one or more of you substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them; (2) you have a Loss of Monthly Income in your occupation of at least 20%; and (3) you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness: (1) you have a Loss of Monthly Income in your occupation of at least 20%; and (2) you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you."

9.     The POLICIES provide that the Residual Disability Monthly Benefit is the benefit determined by a monthly formula. Each month, it equals the Loss of Monthly Income, divided by the Prior Monthly Income, multiplied by the Monthly Benefit for Total Disability... The first six monthly payments for Residual Disability will be the greater of: (a) 50% of the Monthly Benefit for Total Disability; or (b) the Residual Disability Monthly Benefit determined for each month."

10.    In addition, following one year of Residual Disability, DR. GRIFFITH's monthly benefit was to increase each year pursuant to the Cost of Living Adjustment Benefit Rider.

11.    The POLICIES provide DR. GRIFFITH with Residual Disability Benefits until age 65.

12.    On or about July 1, 1991, DR. GRIFFITH received a Change in Coverage notice confirming that the POLICIES had an elimination period of 30 days.

13.    Sadly, on or about December 1, 2011, DR. GRIFFITH was unable to continue working as a family medicine practitioner due to the symptoms of thoracic outlet syndrome and carpel tunnel syndrome, which include, but are not limited to muscle spasms, pain and numbness.

14.    On or about January 13, 2012, DR. GRIFFITH submitted an Individual Disability

— 3 —

COMPLAINT & JURY DEMAND

Claim Form to PROVIDENT due to her ongoing symptoms related to Thoracic Outlet Syndrome.

15.     On or about February 24, 2012 DR. GRIFFITH's attending physician, William Mealer, M.D., completed an Attending Physician Statement wherein he provided a primary diagnosis of thoracic outlet syndrome and a secondary diagnosis of carpal tunnel syndrome.  He stated that MS. GRIFFITH "must limit computer use and writing."

16.     During the time DR. GRIFFITH was unable to perform her occupation, she purchased an ergonomic computer cart and specialized medical transcription software in an effort to return to work on a full time basis.  Due to her perseverance, on or about January 17, 2012, DR. GRIFFITH returned to work on a residual basis.

17.     On or about March 13, 2012, PROVIDENT wrote to DR. GRIFFITH and confirmed receipt of her request for Individual Disability benefits.

18.     On or about April 3, 2012, Fred Reitler, M.D., president of South Bay Family Medical Group Inc., completed a General Employee Information form as requested by PROVIDENT as follows:

- Dr. Reitler indicated that DR. GRIFFITH returned to work on January 17, 2012.
- Dr. Reitler confirmed that DR. GRIFFITH's position required 70+ hours per week.
- Employee Job Description: "Family physician:  Examine & treat patients, perform small surgical procedures and colposcopy.  Some seated/some standing.  Enter all information to electronic medical record.  Outpatient & afterhours...  Helps with secretarial/pharmacy/legal/analysis & administration."

19.     On or about June 5, 2012, DR. GRIFFITH was notified that to date, she had failed to satisfy the elimination period.  PROVIDENT incorrectly represented the POLICIES had an elimination period of 90 days:

"Your policies have a 90 day elimination period...it is our understanding that you were totally disabled and out of work for the period of December 1, 2011 to January 17, 2012. You further advised us that you were again out of work for the period of April 18, 2012 to April 24, 2012 and more recently advised us that you were out of work for a week in May.

DONAHUE & HORROW, LLP

– 4 –
COMPLAINT & JURY DEMAND

You have satisfied 59 days of your Elimination Period; therefore, to date, you have not met the Elimination Period."

20.     On or about June 2012, at PROVIDENT's request, DR. GRIFFITH underwent an ergonomic consultation with Ms. Lisa Fitzpatrick of Ergo Links.

21.     In a letter dated July 3, 2012, PROVIDENT confirmed that DR.GRIFFITH was claiming a period of Residual Disability as of December 1, 2011.  Further, PROVIDENT offered to consider DR. GRIFFITH's residual disability and pay for the cost of the ergonomic consultation of Ms. Fitzpatrick which was completed at PROVIDENT's request.  PROVIDENT also offered to pay for  six months of ergonomic services, with the understanding that the claim would be subsequently be closed, as follows:

- "During our conversation you advised us that since December 1, 2011 you have had periods of time when you were unable to work in any capacity and other periods of time when you were only able to work at 50% of your pre-disability schedule."

- "We have agreed to pay for the recommended [ergonomic] equipment, services and training... We have also agreed to consider Residual Disability from February 29, 2012 and pay you 50% of your monthly benefit for a 6-month period while you transitions back to full time work with the understanding that your claim will be closed."

22.     In a July 20, 2012 letter, PROVIDENT clarified it's July 3, 2012 offer:

- "Since your expect to resume full time work as planned at the end of the 6 months, you would not qualify for Residual Disability or Total Disability benefits...However, if you are unable to resume full time work as planned at the end of the 6 months, you could still qualify for additional benefits."

23.     On or about August 8, 2012, DR. GRIFFITH notified PROVIDENT that she was declining the above mentioned offer and expressed her interest in pursuing her claim for residual disability benefits.

24.     On or about August 20, 2012, Uri Zeevl, PT, DR. GRIFFITH'S attending physician therapist who provided the following observations:

- "Symptoms are aggravated by writing, typing, grasping and were eased by rest, gentle stretching and medications.  She has limited ability holding a pen, typing, work with a mouse…"
- "Since the beginning of December 2011, Dr. Griffith was seen in physical therapy routinely, twice a week and performed daily home exercise program."
- "During the middle of January 2012 she was able to write for short period with less symptoms of numbness.  She resumed minimal computer work which immediately increased the symptoms in the forearm and palm."
- "Since February until now, overall symptoms have decreased in rest, but will increase after short period of computer work and writing."

25.     On or about September 4, 2012, DR. GRIFFITH completed an Individual Disability Status Update wherein she provided PROVIDENT with the following information:

- "I returned to work in my occupation as a family practice physician on 1/17/12 with a reduced patient load.  Even though I have been seeing fewer patients than before 12/1/11 I still work over 60 hours a week."
- "I have not been able perform my occupational duties as I did them before 12/1/11  I have to significantly limit the computer work that I do…We are required to document all our patient visits with an electronic medical record (EMR)… I must use the EMR to document the patient visit in the way that is demanded by the U.S. Government.  I am not able to do that."
- "I also have stopped doing blood pressure checks manually as pumping up the bulb causes me to have more symptoms."
- "I have been referring my colposcopies to other doctors and not performing them myself.  I have also been sending patients with biopsies of the skin to other doctors.  I have declined to suture lacerations in the office for the same reason as I am unable to do so because of pain and discomfort."
- "In order to return to my occupation, I have had to make changes in the usual way I used to perform my duties.  I have to minimize my writing and computer work."

- "The shareholders have voted that any shareholder who does not meet these requirements [if the EMR system] will be responsible to reimburse the corporation for that loss of income to the corporation…. I have not been able to find a solution to being able to meet these demands for the future…This is very frustrating as I love treating my patients and I love working with my group. I have been with this group for 26 years."

26.    On October 8, 2012, George A. Macer, Jr., M.D. was hired by PROVIDENT to prepare an evaluation of DR. GRIFFITH. In his report he made the following observations:

- "Radiographs of the right shoulder were taken on December 1, 2011, which showed calcium deposits."
- "Electrodiagnostic studies performed on August 17, 2012, by neurologist Lawrence Kneisley, M.D., were consistent with moderate carpal tunnel syndrome on the right and mild carpal tunnel syndrome on the left."

In his report, Dr. Macer provides a diagnosis of calcific tendinitis of the right shoulder and bilateral carpal tunnel syndrome.

27.    On or about November 9, 2012, PROVIDENT, after receiving Dr. Macer's evaluation, unreasonably denied DR. GRIFFITH's claim for disability benefits.

28.    In a letter dated January 14, 2013, DR. GRIFFITH wrote to PROVIDENT wherein she provided a description of her current condition:

- "I have been using the tables, chair, monitor, headset, roller mouse and dictation software. I am still not able to practice in medicine and perform my occupational duties in the usual and customary manner I was able to prior to 12/1/2011 and I am still in pain daily."
- "My symptoms have never gone away fully. In fact, now my symptoms are almost as severe as a year ago, interrupting my sleep and keeping me from being able to fully practice as I did as of 11/30/11."
- "I have not been able to take blood pressures, perform biopsies and colposcopies, and I have pain during the examination of patients like looking in eyes and ears. I am not able to do the proper documenting, reviewing labs and messages as I did before 12/1/11. I am not able to see as many patients as I did before 12/1/11."

DONAHUE & HORROW, LLP

— 7 —
COMPLAINT & JURY DEMAND

29.     On or about February 2, 2013, William J. Mealer, M.D., DR. GRIFFITH's treating orthopedist, provided a report wherein he stated the following:

- "She was diagnosed as have a cervical strain with thoracic outlet syndrome with a markedly positive Adson test on the right.  She further has evidence of calcific tendinitis of the right shoulder with limitation of motion of the right shoulder and persistent pain.  There is evidence of overuse syndrome of the right dominant upper extremity with volar and dorsal forearm spasm and tenderness.  Additionally, she does have significant moderate right carpal tunnel syndrome as diagnosed by EMG and nerve conductions study."

- "At this time, in this examiner's opinion she is unable to perform all of her occupational duties.  She is not able to do her full occupational duties secondary to significant thoracic outlet syndrome as well as having the contributing factors of calcific tendinitis of the right shoulder and moderate carpal tunnel syndrome of the right wrist."

30.     On or about February 14, 2013, DR. GRIFFITH sent a letter to PROVIDENT, attaching Dr. Mealer's February 2, 2013 report, wherein she requested that PROVIDENT reconsider her claim and eligibility for disability benefits.

31.     In a February 20, 2013 letter, PROVIDENT confirmed receipt of DR. GRIFFITH's February 14, 2013 correspondence and stated that the Dr. Mealer's report would be reviewed.

32.     On or about May 1, 2013, PROVIDENT wrote to DR. GRIFFITH and informed her that the prior denial decision would be upheld.

33.     On or about July 19, 2014, DR. GRIFFITH wrote to PROVIDENT and further explained her residual disability, stating, "As a result, between December 1, 2011 and June 1, 2013 I had a loss of income of more than 20% due to my disability which required me to limit my computer use, limit my writing and decrease patient visits."

34.     In a letter dated July 24, 2014, PROVIDENT denied DR. GRIFFITH's request for additional review.

\\\

\\\

\\\

DONAHUE & HORROW, LLP

– 8 –

COMPLAINT & JURY DEMAND

**PLAINTIFF, NANCY GRIFFITH, M.D., FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and DOES 1 through 10, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:**

1.     Plaintiff refers to each and every paragraph of the General Allegations and incorporates those paragraphs as though set forth in full in this cause of action.

2.     Defendants, and each of them, have breached their duty of good faith and fair dealing owed to Plaintiff in the following respects:

a.     Unreasonably failing to make full payments to Plaintiff at a time when Defendants knew that Plaintiff was entitled to the payments under the terms of the Policy.

b.     Unreasonably delaying full payments to Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

c.     Unreasonably withholding full payments from Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

d.     Unreasonably misrepresenting to Plaintiff pertinent facts and insurance Policy provisions relating to the coverage in issue.

e.     Failing to reasonably and promptly investigate and process Plaintiff's claim for benefits.

f.     Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim for benefits in which liability has become reasonably clear.

g.     Failing to promptly provide a reasonable explanation of the basis relied upon in the Policy, in relation to the applicable facts, for the denial of Plaintiff's claim for benefits.

h.     Plaintiff is informed and believes and thereon alleges that Defendant has breached its duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

3.     As a proximate result of the aforementioned unreasonable conduct of Defendants,

Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

4.     As a further proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in a sum to be determined at the time of trial.

5.     As a further proximate result of the unreasonable conduct of Defendants, Plaintiff was compelled to retain legal counsel to obtain the benefits due under the Policy.  Therefore, Defendants are liable to Plaintiff for those attorneys' fees, witness fees, and costs of litigation reasonably necessary and incurred by Plaintiff in order to obtain the Policy benefits in a sum to be determined at the time of trial.

6.     Defendants' conduct described herein was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

7.     Defendants' conduct was highly reprehensible because (1) it caused Plaintiff not only substantial economic loss, but also personal physical injury and physical sickness; (2) it demonstrated Defendants' indifference and reckless disregard as to the health and safety of Plaintiff; (3) it was repeated and continuous, rather than just an isolated incident; (4) it caused harm to Plaintiff not by accident, but rather by Defendants' intentional malice, trickery, and deceit; and (5) Plaintiff was financially vulnerable to Defendants' conduct.

8.     Defendants' conduct described herein was undertaken by the corporate Defendant's deputies or managing agents, identified herein as DOES 1 through 10, who were responsible for claims supervision and operations, underwriting, communications and/or decisions.  The

DONAHUE & HORROW, LLP

– 10 –
COMPLAINT & JURY DEMAND

1  aforedescribed conduct of said managing agents and individuals was therefore undertaken on behalf

2  of the corporate Defendants.  Said corporate Defendants further had advance knowledge of the

3  actions and conduct of said individuals whose actions and conduct were ratified, authorized, and

4  approved by managing agents whose precise identities are unknown to Plaintiff at this time and are

5  therefore identified and designated herein as DOES 1 through 10, inclusive.

6  **PLAINTIFF, NANCY GRIFFITH, M.D., FOR A SECOND CAUSE OF ACTION AGAINST**

7  **DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and DOES**

8  **1 through 10 FOR BREACH OF CONTRACT, ALLEGES:**

9      9.    Plaintiff refers to each and every paragraph of the General Allegations and

10  incorporates those paragraphs as though set forth in full in this cause of action.

11      10.    Defendants, and each of them, owed duties and obligations to Plaintiff under the

12  Policy.

13      11.    Defendants, and each of them, breached the terms and provisions of the insurance

14  Policy by failing and refusing to pay benefits under the Policy as set forth in the second paragraph of

15  the First Cause of Action, incorporated herein by reference.

16      12.    As a direct and proximate result of Defendants' conduct and breach of their

17  contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be

18  determined according to proof at the time of trial.

19      WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

20  follows:

21  AS TO THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND

22  ACCIDENT INSURANCE COMPANY and DOES 1 through 10, inclusive, FOR BREACH OF

23  THE DUTY OF GOOD FAITH AND FAIR DEALING:

24      1.    Damages for failure to provide benefits under the Policy, plus interest, including

25  prejudgment interest pursuant to Section 10111.2 of the California Insurance Code, and other

26  economic and consequential damages, in a sum to be determined at the time of trial;

27      2.    General damages for mental and emotional distress in a sum to be determined at the

28  time of trial;

DONAHUE & HORROW, LLP

— 11 —
COMPLAINT & JURY DEMAND

3.     For attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain the Policy's benefits in an amount to be determined at the time of trial;

4.     Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5.     For costs of suit incurred herein; and,

6.     For such other and further relief as the Court deems just and proper.

AS TO THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT:

1.     Damages under the Policy in an amount to be determined according to proof at the time of trial;

2.     For costs of suit incurred herein; and

3.     For such other and further relief as the Court deems just and proper.

Dated: September 19, 2014                        DONAHUE & HORROW, LLP

MICHAEL B. HORROW
JOHN P. WORGUL
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: September 19, 2014                        DONAHUE & HORROW, LLP

MICHAEL B. HORROW
JOHN P. WORGUL
*Attorneys for Plaintiff*

DONAHUE & HORROW, LLP

– 12 –
COMPLAINT & JURY DEMAND

**COPY**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):
Michael B. Horrow/John Worgul     SBN: 162917/259150
DONAHUE & HORROW LLP
1960 E Grand Ave, Ste 1215, El Segundo, CA 90245
TELEPHONE NO.: (310) 322-0300     FAX NO.: (310) 322-0302
ATTORNEY FOR (Name): Nancy Griffith, M.D.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse on Hill St.

CASE NAME: Griffith, M.D. v. Provident Life and Accident Insurance Company, et al.

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 24 2014

Sherri R. Carter, Executive Officer/Clerk

By Myrna Beltran, Deputy

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC 5 5 8 5 8 0 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

**BY FAX**

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [X] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action (specify):
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 22, 2014

Michael B. Horrow/John Worgul
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

-26-

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice— Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

# COPY

| SHORT TITLE: Griffith, M.D. v. Provident Life and Accident Ins. Co., et al. | CASE NUMBER BC 5 5 8 5 8 0 |
| --- | --- |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7-10 ☐ HOURS/ ☒ DAYS

**Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):**

**BY FAX**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

-28-

| SHORT TITLE: Griffith, M.D. v. Provident Life and Accident Ins. Co., et al. | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation  Number of parcels____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)  **CIVIL CASE COVER SHEET ADDENDUM**  Local Rule 2.0
LASC Approved 03-04  **AND STATEMENT OF LOCATION**  Page 2 of 4

-29-

| SHORT TITLE: Griffith, M.D. v. Provident Life and Accident Ins. Co., et al. | | CASE NUMBER | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Griffith, M.D. v. Provident Life and Accident Ins. Co., et al. | CASE NUMBER |
| --- | --- |

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>P.O. Box 1583 |
| --- | --- |
| CITY:<br>Torrance | STATE:<br>CA | ZIP CODE:<br>90505 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: September 22, 2014

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4 |
| --- | --- | --- |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number _____   BC558580

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the judicial officer indicated below . There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Michael Johnson | 56 | 514 |
| Hon. Terry A. Green | 14 | 300 | Hon Rolf M. Treu | 58 | 516 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Rita Miller | 16 | 306 | Hon. Mark Mooney | 68 | 617 |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Robert L. Hess | —24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Mary H. Strobel | 32 | 406 | | | |
| Hon. Michael P. Linfield | 34 | 408 | | | |
| Hon. Gregory Alarcon | 36 | 410 | **Hon. Emilie H. Elias** | **324** | **CCW** |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | | | |
| Hon. Frederick C. Shaller | 46 | 500 | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | |
| Hon. Deirdre Hill | 49 | 509 | | | |
| Hon. John L. Segal | 50 | 508 | | | |
| Hon. Mitchell L. Beckloff | 51 | 511 | **\*Provisionally Complex Non-Class Action Cases** | | |
| Hon. Susan Bryant-Deason | 52 | 510 | Assignment is Pending Complex Determination | 324 | CCW |
| Hon. Steven J. Kleifield | 53 | 513 | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | |

**\*Complex**

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____        SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev05/14)        **NOTICE OF CASE ASSIGNMENT —**        Page 1 of 2
LASC Approved 05-06
For Optional Use        **UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use

**NOTICE OF CASE ASSIGNMENT –**

**UNLIMITED CIVIL CASE**

Page 2 of 2

-33-

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:           FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

Date:

_____      ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (new)
LASC Approved 04/11   **STIPULATION – EARLY ORGANIZATIONAL MEETING**   Page 1 of 2

| | |
|---|---|
| SHORT TITLE: | CASE NUMBER: |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR PLAINTIFF)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)

Date: 

_____          ▶ _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                              FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:　　　　　　　　　　　FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER -- MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)<br>LASC Approved 04/11　　　　**STIPULATION AND ORDER -- MOTIONS IN LIMINE**<br>For Optional Use　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 2

| SHORT TITLE | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: Hinshaw & Culbertson LLP, 633 West Fifth Street, 47th Floor, Los Angeles, California 90071-2043.

On October 24, 2014, I served the foregoing document(s) described as **NOTICE OF REMOVAL BASED ON DIVERSITY AND FEDERAL QUESTION** on the interested parties in this action by placing [  ] the original [xx] a true copy thereof enclosed in a sealed envelope addressed as follows:

Michael B. Horrow, Esq.                    Attorneys for Plaintiff
John P. Worgul, Esq.                        NANCY GRIFFITH, M.D.
DONAHUE & HORROW, LLP
1960 E. Grand Ave., Suite 1215
El Segundo, CA  90245
Tel.:  (310) 322-0300
Fax:  (310) 322-0302

[xx]  **BY MAIL**

   [ ] I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

   [x] I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[xx]  **(FEDERAL)**        I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at Los Angeles, California on October 24, 2014.

NAME:  Gloria V. Valles          _Gloria V. Valles_
                                          (Signature)

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

i:\office7\7671\536\14pleadings\proof - federal.doc

POS